❏ Original ❏

CLERK'S OFFICE
A TRUE COPY
Jun 01, 2023
s/ JDH

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
records and information associated with the cellular )
device assigned call number (402) 805-1156, in the )
custody or control of AT&T; (See Attachments) )

Case No. 23-M-371 (SCD)

**Matter No.: 2023R00070**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before     6-15-23     *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.  ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Stephen C. Dries     .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of     11/27/2023     .

Date and time issued:     June 1, 2023. 10:00 am

*Stephen C. Dries*
*Judge's signature*

City and state:     Milwaukee, Wisconsin          Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

Records and information associated with the cellular device assigned call number **(402) 805-1156** (referred to herein and in Attachment B as "the **Target Cellphone**"), with listed subscriber name Maria Carrillo, of 1920 J Street Apt. 4, Lincoln, NE 68510, that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 208 S. Akard Street, Dallas, Texas 75202

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the **Target Cellphone** for the time period January 1, 2023 to February 1, 2023:

        i.  Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cellphone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as any E-911 Phase II data, including per-call measurement data (also known as "real-time tool" or "RTT"), or NELOS data.

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Miguel MAZABA-ACHO, Jorge HERNANDEZ, and other unknown persons, during the period January 1, 2023, to February 1, 2023.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.



CLERK'S OFFICE
A TRUE COPY
Jun 01, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the
### Eastern District of Wisconsin

In the Matter of the Search of      )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )

records and information associated with the cellular )
device assigned call number (402) 805-1156, in the )
custody or control of AT&T; (See Attachments) )

Case No. **23-M-371 (SCD)**
**Matter No.: 2023R00070**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

    See Attachment A

located in the      Eastern      District of      Wisconsin      , there is now concealed *(identify the person or describe the property to be seized)*:

    See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☑ evidence of a crime;

    ☐ contraband, fruits of crime, or other items illegally possessed;

    ☐ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a Controlled Substance, Conspiracy, Unlawful Use of a |
| 21 U.S.C. § 846 | Communication Facility |
| 21 U.S.C. § 843(b) | |

The application is based on these facts:

    See attached Affidavit

    ☑ Continued on the attached sheet.

    ☑ Delayed notice of  180  days *(give exact ending date if more than 30 days:*  11/27/2023  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**JEFFREY MILAM** Digitally signed by JEFFREY MILAM
Date: 2023.05.31 14:48:41 -05'00'
*Applicant's signature*

SA Jeffrey R. Milam, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

    Telephone      *(specify reliable electronic means).*

Date:    6-1-23

*Judge's signature*

City and state:   Milwaukee, Wisconsin

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AN APPLICATION FOR A SEARCH WARRANT

I, Jeffrey R. Milam, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for historical information about the location of the cellular telephone assigned call number (402) 805-1156 (the "**Target Cellphone**"), whose service provider is AT&T ("Service Provider"), a wireless telephone service provider headquartered at 208 S. Akard Street, Dallas, Texas 75202. The **Target Cellphone** is subscribed to Maria Carrillo at 1920 J Street Apt. 4, Lincoln, Nebraska 68510. The **Target Cellphone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since September 2014. Before that, I was employed as a police officer with the St. Louis County Police Department in St. Louis, Missouri, where I spent the last three years as a Task Force Officer with the DEA. During my tenure as a Special Agent, I have been involved primarily in the investigation of large-scale drug traffickers operating not only in the City of Milwaukee and the State of Wisconsin, but also throughout the entire United States based upon the direction of investigations that arise through the Milwaukee District Office of the Drug Enforcement Administration.

3.      As a federal law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many

individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

4.      Based upon my training and experience, as well as information relayed to me during the course of my official duties, I know that a significant percentage of controlled substances, specifically marijuana, cocaine, heroin, and methamphetamine imported into the United States come from Mexico and enter the domestic market at various points along the southwest border of the United States, because Mexican cartels control the transportation, sale, and importation of cocaine, marijuana, heroin, and methamphetamine into the United States.

5.      Based on my training, experience, and conversations with other law enforcement officers, I know that distributors of marijuana, methamphetamine, cocaine, heroin, as well as other controlled substances, often use cellular and landline telephones.  Additionally, I know that drug

traffickers often change their phone numbers and cellular devices on a frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identities. I know that these individuals often use code words to discuss controlled substances and methods of concealing controlled substances while talking on the telephone. I know that drug traffickers often conduct extensive counter-surveillance to avoid law enforcement detection.

6.     Based upon training and experience, I know that narcotics-trafficking and money-laundering organizations routinely use several operational techniques to sustain their illegal enterprises. These practices are designed and implemented to achieve two paramount goals: (1) the successful facilitation of the organization's illegal activities, including the importation and distribution of controlled substances, and the subsequent repatriation of the proceeds of that illegal activity; and (2) the minimization of the exposure of co-conspirators, particularly those operating in leadership roles, from investigation and prosecution by law enforcement.  More specifically, based on my training and experience, I know the following:

a.     Sophisticated drug-trafficking organizations routinely compartmentalize their illegal operations. The compartmentalization of operations reduces the amount of knowledge possessed by each member of the organization.  This method of operation effectively minimizes the potential damage an individual cooperating with law enforcement could inflict on the organization and further reduces the adverse impact of a particular law enforcement action against the organization.

b.     Members of these organizations routinely used communications facilities, such as cellular telephones, to communicate directions and information about the organization's illegal activities to other organization members.

c.     During the course of these telephonic communications, organization members routinely use coded references and encryption in an effort to elude law enforcement detection.

d.     The communication of time sensitive information is critical to the successful conduct of these organizations' illegal activities.  The critical nature of this information stems from the necessity of the organization's leadership to provide direction for the importation and distribution of

narcotics, and the subsequent laundering of the proceeds of those illegal activities.

e.      Drug traffickers and the money launderers associated with them often confine their illegal telephonic communications to long-trusted organizational members and other high-level narcotics traffickers in an attempt to evade law enforcement and circumvent narcotics investigations; and

f.      Drug traffickers routinely use fictitious names or other individuals to register pagers, telephones, vehicles, real property, and utility services to avoid detection by law enforcement.

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) have been committed by Miguel MAZABA-ACHO and other unknown persons, collectively identified as the MAZABA Drug Trafficking Organization (DTO). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

9.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.     The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Miguel MAZABA, Jorge HERNANDEZ, and other unidentified subjects for possible violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b).

11.     In December 2022, DEA Milwaukee case agents debriefed a confidential source (hereinafter "CS#1") regarding his/her knowledge of drug distribution activities occurring in the

greater Milwaukee, Wisconsin region.[1] CS#1 identified a subject, Jorge HERNANDEZ, as a Milwaukee-area cocaine distributor. HERNANDEZ informed CS#1 about an associate, based in Mexico, who was responsible for the importation of large amounts of controlled substances (primarily cocaine) into the United States. HERNANDEZ identified this person as "Miguel" and gave CS#1 "Miguel's" telephone number, which was 52-2293900169. The numeric prefix "52" is the country code for Mexico.

12.     CS#1 subsequently contacted "Miguel" by calling 52-2293900169. During these communications, CS#1 and "Miguel" discussed future drug/money transactions. "Miguel" told CS#1 that large amounts of cocaine were currently being distributed out of Chicago, Illinois. "Miguel" said up to three-hundred (300) kilograms of cocaine were being transported to Chicago, Illinois on a monthly basis. "Miguel" offered to sell kilogram-quantities of cocaine to CS#1 through a Chicago, Illinois source(s) of supply (SOS). "Miguel" said the price per kilogram of cocaine would be $35,000. "Miguel" offered to lower the price to $25,000 per kilogram of cocaine if CS#1 purchased five (5) or more kilograms of cocaine. During one communication with CS#1 (via a social-media app), "Miguel" sent a photograph of himself to CS#1. CS#1 viewed the photograph and then promptly deleted it from CS#1's cellphone. During the conversation, "Miguel" indicated that he was currently living in the Cancun, Mexico region.

13.     Case agents utilized a law enforcement database and identified a Miguel MAZABA-ACHO, an Hispanic male, DOB: 04-15-1990 as the possible true identity of "Miguel." When case agents showed an image of MAZABA-ACHO to CS#1, CS#1 identified the person in

---

[1] Case agents believe CS#1's information is reliable and credible. Substantial parts of CS#1's information have been independently corroborated and verified by law enforcement, including information obtained from various public databases, physical surveillance, and controlled buys. CS#1 has actively participated in numerous drug investigations, including controlled purchases, leading to the successful prosecution of numerous defendants. CS#1's cooperation has also led to numerous search warrants and arrests. CS#1 has a conviction in the State of Wisconsin for OWI. CS#1 is cooperating for financial compensation.

this image as "Miguel." Case agents further learned that MAZABA-ACHO previously lived in Milwaukee, Wisconsin. While in Milwaukee, MAZABA-ACHO was convicted of Burglary-Building or Dwelling (a felony offense) and was sentenced on March 28, 2016 to 2 years state prison and 2 years extended supervision. In July 2017, MAZABA-ACHO was deported to Mexico.

14. On January 13, 2023, HERNANDEZ, using telephone number (414) 488-5710, contacted CS#1. During the conversation, which was not recorded, HERNANDEZ said MAZABA-ACHO was looking for someone to pick up a male individual in Peoria, Illinois. HERNANDEZ said this male individual had just transported narcotics to the Chicago, Illinois region and needed transportation to Lincoln, Nebraska. When CS#1 later inquired about MAZABA-ACHO's request, HERNANDEZ indicated that another person had already agreed to transport this male individual to Lincoln, Nebraska.

15. In early February 2023, case agents conducted a toll analysis on Mexican telephone number 52-2293900169, i.e., the number used by MAZABA-ACHO (a/k/a "Miguel"), covering the time period between January 30, 2023 and February 10, 2023. During this time period, MAZABA-ACHO was in contact with telephone number (402) 805-1156 (i.e., the **Target Cellphone**) on forty-three (43) occasions. The "402" area code is affiliated with the eastern portion of Nebraska and covers cities that include Lincoln and Omaha. Case agents subsequently obtained tolls and subscriber records for the Target Cellphone. The **Target Cellphone**'s listed subscriber was "Maria Carrillo," whose listed residence was 1920 J Street Apt. 4, Lincoln, Nebraska 68510. Additional toll records revealed that the **Target Cellphone** was in frequent contact with 52-2293900169 on January 5, 2023, and next communicated with 52-2293900169 on January 11, 2023.

16.     On January 13, 2023, the **Target Cellphone** contacted telephone number (779) 758-5247 on three occasions.  The "779" area code is affiliated with the northern Illinois region outside the Chicago and Quad Cities areas.  The **Target Cellphone** and (779) 758-5247 communicated on three occasions on January 14, 2023 and on one occasion on January 16, 2023. Subscriber information indicates (779) 758-5247 is subscribed to "DISH WIRELESS LLC" with a listed address of 9601 S. Meridian Blvd., Englewood, CO.  According to the service-provider's records, the user of (779) 758-5247 had been a customer since October 14, 2022 and (779) 758-5247 had been actively used since January 4, 2023.

17.     During a further toll analysis of the **Target Cellphone**, case agents identified a commonly called number: (402) 503-5827, which was used by an Omaha, Nebraska-area fentanyl dealer, according to a separate DEA investigation.

18.     Based on, *inter alia*, HERNANDEZ's disclosure, on January 13, 2023, that MAZABA-ACHO needed someone to transport a drug courier, who delivered drugs to Chicago, back to Lincoln, Nebraska; the numerous contacts between 52-2293900169 (MAZABA-ACHO's suspected number) and the **Target Cellphone** (having a number affiliated with the Lincoln, Nebraska region) in the days preceding January 13, 2023; the **Target Cellphone**'s contacts with (779) 758-5247, a number affiliated with a region in close proximity to Chicago, Illinois, on January 13, 14, and 16, 2023; and that the **Target Cellphone** had been linked to a number used by an Omaha, Nebraska-based fentanyl distributor, your Affiant believes the user of the **Target Cellphone** is the drug courier who HERNANDEZ disclosed needed transportation to Lincoln, Nebraska on or about January 13, 2023.

19.     Case agents believe the cell site location information will show the movements of the **Target Cellphone** from approximately January 1, 2023 to February 1, 2023. Specifically, this

information will likely show when the user of the **Target Cellphone** is alleged to have driven from Lincoln, Nebraska to a yet unknown location in the Chicago, Illinois region. Furthermore, the cell site location information may provide target addresses in Lincoln, Nebraska; Peoria, Illinois; Chicago, Illinois and other as yet unknown locations of importance relative to this instant investigation.

## TECHNICAL BACKGROUND

20.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

21.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **Target Cellphone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of

the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

22.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Cellphone**, including by initiating a signal to determine the location of the **Target Cellphone** on the Service Provider's network or with such other reference points as may be reasonably available.

## E-911 Phase II / GPS Location Data

23.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Cellphone**, including by initiating a signal to determine the location of the **Target Cellphone** on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

24.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber

Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

25.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cellphone**'s user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

26.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

27.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

28.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

Records and information associated with the cellular device assigned call number **(402) 805-1156** (referred to herein and in Attachment B as "the **Target Cellphone**"), with listed subscriber name Maria Carrillo, of 1920 J Street Apt. 4, Lincoln, NE 68510, that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 208 S. Akard Street, Dallas, Texas 75202

**Particular Things to be Seized**

I.     **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the **Target Cellphone** for the time period January 1, 2023 to February 1, 2023:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long-distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cellphone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

 (ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as any E-911 Phase II data, including per-call measurement data (also known as "real-time tool" or "RTT"), or NELOS data.

## II.      Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Miguel MAZABA-ACHO, Jorge HERNANDEZ, and other unknown persons, during the period January 1, 2023, to February 1, 2023.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.